UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

    - against -

DAMIAN YOUNG and KEITH DARLING,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 9, 2011
```

10 Cr. 640 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

  Defendants Damian Young ("Young") and Keith Darling ("Darling") (collectively, "Defendants") move (1) to suppress physical evidence and statements obtained during and after their April 30, 2010 arrests; (2) for disclosure of any Rule 404(b) evidence that the Government may offer at trial; and (3) for disclosure of all Brady materials.[1]  The Court held a suppression hearing on February 10, 2011 and now denies all three motions.

## BACKGROUND[2]

  Defendants were arrested on April 30, 2010, at approximately 6:30 p.m., while sitting in a parked car on the street in the Bronx, near the intersection of East 241st Street and Richardson Avenue.  The events leading up to their arrest began about a month earlier, when Detective LaMazza received information from a source that someone was planning to rob a drug dealer in the Wakefield neighborhood of the Bronx. (Tr. 10). The source had been registered with the NYPD since July or August of 2009; and thereafter provided reliable information leading to arrests and seizures of narcotics on approximately four separate occasions. (Tr. 6, 8, 43). On April 30, 2010, the source informed Detective LaMazza that the robbery was going to occur that

---

[1] Young filed his motion on November 19, 2010, which Darling joined on February 9, 2011.
[2] This section contains undisputed facts and the Court's findings following the February 10, 2011 suppression hearing, at which New York City Police Detective Gaetano LaMazza was the sole witness.

day. (Tr. 44, 45). At approximately 1:15 or 1:30 p.m., the source met with Detective LaMazza and his supervisor, Sergeant Crimmins, and called the suspect in their presence. While on speaker phone, the source and the suspect discussed the planned robbery of a drug dealer located on 635 East 241st Street, between Matilda and Carpenter Avenues. (Id. at 8-9, 10-11, 14, 52-53). They decided that the source would leave the apartment building to smoke a cigarette and leave the door open so that the suspect could go upstairs and commit the robbery. (Id. at 10). Throughout the day, thereafter, the source continued to provide information, both in person and over the phone, including that the suspect would be accompanied by another individual; that the suspect was a handsome, clean-cut black man wearing a red shirt; and that they would arrive in a grey SUV with at least one gun.

Detective LaMazza had information that two individuals, with at least one gun, would arrive by SUV to commit a robbery of a drug spot. In response to this information, several unmarked police cars were stationed in the area surrounding the site of the planned robbery. (Tr. 14-15, 19). Detective LaMazza, along with Detectives Moran and Negron, had positioned their vehicle at the intersection of White Plains Road and East 241st Street, when he noticed a grey Jeep Cherokee turn left onto 241st Street. The SUV contained two occupants; the passenger was a clean-cut black man wearing a red shirt.[3] It then turned off of East 241st Street, left onto Richardson Avenue without signaling,[4] pulled up to the curb, and parked near 4643 Richardson Avenue (which is approximately one and a half blocks from the site of the planned robbery). (Tr.

---

[3] Detective LaMazza later learned that Darling was the driver and Young the passenger.
[4] This minor traffic infraction is the only basis for the subsequent stop mentioned in the complaint and the failure to signal is noted in Detective LaMazza's memo book but he candidly testified that he was planning to stop the Defendants' car regardless of any traffic infraction. It is clear that the traffic infraction had nothing to do with the stop here and that the stop was based on the information provided by the source, which Detective LaMazza was able to substantiate. The Court credits Detective LaMazza's explanation that he did not wish to note his confidential source in his memo book. (Tr. 122). The traffic infraction played no role in the Court's decision.

15-16). During this time, Detective LaMazza received a call from the source stating that the suspects were "parking up." (Tr. 15, 118).

Detective LaMazza's vehicle made a u-turn and pulled up behind the parked SUV. The three officers, in plain clothes, approached with guns drawn and announced that they were police. (Tr. 16-17, 19, 20). Detectives LaMazza and Negron approached Young and ordered him to show his hands. He complied; and the detectives removed him from the vehicle, placed him facedown on the ground, and handcuffed him. Detective Negron frisked Young and discovered a loaded 9mm firearm in his front waistband. On the other side of the vehicle, Detective Moran approached Darling, who exited the vehicle and tried to get away, like a "running back." "He flailed his arms" and tried to push through the officers. (Tr. 26). After securing Young, Detective LaMazza proceeded to assist Detective Moran, who was still struggling with Darling. They eventually subdued him with the assistance of several other officers who had just arrived. (Tr. 17, 26). They handcuffed Darling and placed him in the back of a police vehicle. (Tr. 21). After both Defendants were handcuffed and secured in separate police vehicles, Detective LaMazza saw a black canvas bag in the rear hatch of the SUV. He opened the bag and found a loaded .40 caliber semiautomatic pistol and a roll of duct tape. (Tr. 27-28).

That evening the Defendants were separately given <u>Miranda</u> warnings, which they signed. Thereafter, both made statements to the officers.[5]  Among other things, they confessed their plan to rob a marijuana dealer in the Bronx; that Young had been carrying a gun in his waistband; and that there was another gun in the back of the SUV.  They were charged in a criminal complaint on May 5, 2010, and indicted by a Grand Jury in this District on July 21, 2010, of the following counts:  (1) conspiring to commit robbery, in violation of 18 U.S.C. §

---

[5] On the way to the precinct, Darling attempted to kick open the door of the vehicle and had to be subdued.  He sustained some minor scrapes from this and the earlier scuffle. At his request, he was taken to a hospital for examination and treatment before being returned to the precinct. (Tr. 33-34, 100).

1951 (Hobbs Act); (2) attempting to commit robbery, in violation of the same statute; (3) using

and carrying firearms in furtherance of this conspiracy, in violation of 18 U.S.C. §

924(c)(1)(A)(I); and (4) convicted felon in possession of a firearm, in violation of 18 U.S.C. §

922 (g)(1).  On or about August 20, 2010, the Government provided discovery to the Defendants,

including a letter that disclosed the information received from the source.

## DISCUSSION

### 1.  Defendants' Motion to Suppress

When reasonable suspicion or probable cause is based on an informant's tip, the Court

must determine whether the information is sufficiently reliable by considering the informant's

"basis of knowledge" (i.e., how he or she knows) and "veracity" (i.e., why he or she should be

believed).  See Alabama v. White, 496 U.S. 325, 328-29 (1990); United States v. Elmore, 482

F.3d 172, 180 (2d Cir. 2007).  An informant with inside information, who meets face-to-face

with the police, and has established a good track record is more reliable.  See Gates, 462 U.S. at

234; Adams v. Williams, 407 U.S. 143, 146-147 (1972); United States v. Salazar, 945 F.2d 47,

50-51 (2d Cir. 1991).  When the informant's tip alone does not sufficiently establish the basis of

knowledge and veracity, the police must corroborate some predictive or suspicious information

through its own investigation.  See Draper v. United States, 358 U.S. 307, 333 (1959); Florida v.

J.L., 529 U.S. 266, 271 (2000); White, 496 U.S. at 329.

An officer may search a vehicle incident to a lawful arrest when the arrestee is "within

reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the

offense of arrest." Arizona v. Gant, 129 S. Ct. 1710, 1714 (2009).  In addition, officers may

search a vehicle taken into custody and make an inventory of its contents without a search

warrant or probable cause to suspect that the vehicle contains contraband or evidence of criminal

conduct. United States v. Lopez, 547 F.3d 364, 369 (2d Cir. 2008). Inventory searches must be conducted in good faith pursuant to "standardized criteria" or "established routine." Id. at 370. "[I]f there has been a lawful arrest and an immediately ensuing search is not justifiable as incident to the arrest, a motion to suppress the proceeds of the immediate search may nonetheless be denied if the contents would inevitably have been discovered in a permissible inventory search." United States v. Perea, 986 F.2d 633, 644 (2d Cir. 1993).

Defendants move pursuant to Fed. R. Crim. P. 12 and 41 to suppress all physical evidence (i.e., two firearms) and incriminating statements obtained during and after their April 30, 2010 arrests.  They argue that the detectives insufficiently corroborated the tip. (Young Mem. in Supp. 2). Since the detectives observed no suspicious behavior, they argue, there could be no reasonable suspicion.[6] (Id. at 5). They further contend that the search of the rear hatch was unjustified because the defendants were secured in the back of the police car and posed no threat to the officers. The Government argues that, based on corroborated information from a reliable source, the officers at least had reasonable suspicion to stop and frisk. Once the first firearm was discovered, they had probable cause to arrest the defendants and search the vehicle for further evidence; alternatively, the Government argues that the second firearm inevitably would have been discovered due to NYPD procedures requiring the inventorying of all cars, whether vouchered or released.

Based on extensively corroborated evidence from a known, reliable source, as well as Darling's attempt to flee, the detectives had probable cause to search the Defendants and, when

---

[6] Young further contends that, even if there were reasonable suspicion, the officer's actions in placing him on the ground and searching under his clothing exceeded the permissible scope of Terry and required a showing of probable cause.  (Young Mem. in Supp. 5). The Court rejects this argument.  Because a superficial Terry frisk would have uncovered the firearm in his waistband, it would not be necessary to search under the clothes.  Indeed, the purpose of such a frisk is to find weapons. In addition, since the tip was solid and well corroborated, the detectives had probable cause to search from the beginning of this incident.

they found the gun on Young, probable cause to arrest both. Additionally, the search the vehicle was lawful because the detectives reasonably believed that it contained a second gun, as there were two suspects planning to participate in this robbery; and because it inevitably would have been discovered in an inventory search.

There is no doubt that the source had an established track record of providing reliable information and provided specific information, corroborated by the officers' observations, on a potential robbery of a drug spot.  The source was known by Detective LaMazza for over a year and had relayed reliable information that led to approximately four separate arrests.  The source also met face to face with the officers and relayed inside information, providing a strong basis of knowledge. Indeed, the officers heard the suspect on speaker phone as he planned the robbery. Regarding the identification of the Defendants as the suspects, the physical description provided—handsome, clean-cut, black man wearing a red shirt in a grey SUV—cannot be viewed in isolation.  That description was bolstered by the steady stream of updated information, including changes in the mode of travel (originally by subway but subsequently by a grey SUV), and the source's simultaneous tracking of the suspects' arrival (i.e., that "they are parking up now").  Accordingly, the detectives corroborated information that related to illegal activity and was predictive.

Based on this record, there was probable cause to search the defendants.  Any question as to Darling's participation was resolved by his attempt to flee when the officers first detained him. On finding the firearm on Young, the officers had probable cause to arrest both men.

The search of the rear hatch is justified both as incident to a lawful arrest and under inevitable discovery.  Since the source indicated that two men would be participating in the robbery of a drug dealer, with at least one gun present, it is reasonable to believe that both

defendants would be armed and that the driver's weapon, if not on his person, would be in somewhere in the vehicle.[7]  In addition, under New York Police Department procedure, when both occupants of a vehicle are arrested, the vehicle is driven to the precinct where an inventory search is conducted; that search includes all closed containers inside the vehicle and the listing of all items on a property voucher. (Tr. 31-33, 97-98).  The discovery of the second firearm was inevitable and, accordingly, it will not be suppressed.

Finally, because the search and arrests were lawful, the subsequent statements will not be suppressed either. The Defendants conceded that they were voluntary, that the Miranda warnings were proper, and that the sole reason for moving to suppress the statements is that they resulted from an unlawful arrest. (Tr. 124).

## 2.  Defendants' motion for immediate disclosure of potential Rule 404(b) evidence

Defendants move for the Government to disclose any prior or subsequent acts that it intends to offer at trial under Rule 404(b).  The defendants maintain that, because the indictment and other discovery do not notify of the intended use of such evidence at trial, pretrial disclosure is necessary to allow them to adequately prepare for trial.  The Government asserts that it already has provided the discovery required by Fed. R. Crim. P. 16 and will fulfill its continuing obligation to do so, providing any 404(b) evidence two weeks prior to trial.

Rule 404(b) requires the prosecution in a criminal case to provide "reasonable notice in advance of trial . . . of the general nature of any . . . evidence [of prior crimes, wrongs, or acts] it intends to introduce at trial."  Fed. R. Evid. 404(b).  Disclosure during trial is only excused on a showing of good cause.  The note to the 1991 Amendment to the Rule indicates that the time and

---

[7] In these circumstances, it would be dangerous to proceed in any other fashion. The Constitution does not compel the officer to accept that kind of risk in making a search incident to a lawful arrest.

manner in which notice must be made is intentionally open-ended, as what is reasonable depends largely on the facts of each case.

This motion is premature, as trial is not even scheduled yet. The Court assumes that the Government will provide this material consistent with its representations to the Court.

**3. Defendants' motion for disclosure of any Brady materials**

Finally, Defendants request an order requiring the Government to provide all materials discoverable under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976). The Government submits that this request is moot, as it is unaware of any Brady material in its possession. It asserts that it will provide such materials if discovered "in time for [their] effective use at trial," as required by United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001). This is sufficient. Accordingly, the motion is moot.


Dated: New York, New York
       March 9, 2011

SO ORDERED

PAUL A. CROTTY
United States District Judge

8